**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HORIZON MATRIX, LLC and STEVEN R. ZIELKE, | |
| Plaintiffs, | Case No. 11 C 2655 |
| v. | Hon. Harry D. Leinenweber |
| WHALEHAVEN CAPITAL FUND, LTD. and ALPHA CAPITAL ANSTALT, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion of Defendants, Whalehaven Capital Fund, Ltd. and Alpha Capital Anstalt, (hereinafter, "Whalehaven" and "Alpha") to dismiss the Complaint on the following grounds: lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted and failure to join a required party. *See* FED R. CIV. P. 12(b)(1-3, 6, 7). For the reasons stated herein, the Motion is granted without prejudice because of a lack of personal jurisdiction. Because there is no personal jurisdiction, the Court does not address the other procedural and jurisdictional objections by Defendants.

**I. BACKGROUND**

Plaintiff Horizon Matrix, LLC (hereinafter, "Horizon") is an Arlington Heights, Illinois company and Plaintiff Steven R. Zielke

(hereinafter, "Zielke") is its President. Zielke, on behalf of Horizon, signed a contract on October 16, 2009 with a struggling California company, One Voice Technologies, Inc., ("One Voice") to help One Voice convince a Chicago patent auctioneer to sell One Voice's patent portfolio. Under the contract, Horizon was to earn a five percent "success fee" if Horizon both convinced the auctioneer to sell One Voice's portfolio and a sale or licensing ultimately occurred. The auctioneer did take the portfolio and a sale ultimately resulted.

Plaintiffs allege One Voice, which is not a party to this lawsuit, sold its patent portfolio at auction in Chicago for $3 million in July 2010. After the auctioneer took its twenty percent fee, leaving $2.4 million, Plaintiffs allege they were due five percent of what remained, or $120,000. Instead, Plaintiffs allege, the $2.4 million was paid not to One Voice, but rather directly to Defendants, who were the primary financial backers of One Voice and were eager for a return on their investment. Defendants, Plaintiffs allege, then passed along to One Voice just $30,000 from the sale, knowing One Voice still owed money on its consulting agreement with Plaintiffs and that the retention of the bulk of the proceeds would deprive Plaintiffs of their "success fee.". Pl.'s Resp., Ex. A ¶11; Pl.'s Resp. 2; Compl. 4, ¶28.

Plaintiffs allege One Voice maintained it had only $30,000 remaining, although whether that "$30,000 remaining" referred only

to One Voice's proceeds from the sale or the sum total of One Voice's assets remains unclear. Compl. 4, ¶29. In any event, Plaintiffs have not been paid.

Plaintiffs allege that Whalehaven, a Bermuda company doing business in New Jersey, and Alpha, a business operating and incorporated in Liechtenstein, had the following involvement with the deal. Before putting up its patents for sale, One Voice checked with Whalehaven, and managers of both Defendants approved of the sale knowing of Plaintiffs' planned assistance and "success fee" arrangement. Compl. 2-4 ¶¶13-14, 28; Pl.'s Resp. 6. Plaintiffs contend that around the time Horizon secured the services of the Chicago auctioneer for One Voice, Defendants engaged in "unnecessary transferring" of the One Voice patents to Defendant Whalehaven Portfolio Manager Eric Weisblum, and then back to One voice "in an attempt to avoid paying Horizon Matrix its success fee duly owed." *Id.* at 7 ¶52. The Complaint does not elaborate on exactly what role that transfer played in the retention of funds by Defendants.

Defendants "reached into this jurisdiction to commit a tort against a resident of this jurisdiction" and were "intimately involved in the patent portfolio sale which occurred in this district," according to Plaintiffs. Pl.'s Resp. 5. Specifically, Whalehaven and Zielke had direct telephone and e-mail communication from 2008 through 2010 regarding One Voice, and Zielke had

"communications" with Alpha on numerous occasions. Pl.'s Resp., Ex. A ¶¶5-7; Pl.'s Resp. 1. Defendants were aware of Plaintiffs' Illinois residency, as well as the Chicago auctioneer's Illinois residency. Pl.'s Resp. 6. The patent sale occurred in Illinois, the proceeds received by Defendants came from Illinois, and Plaintiffs alleged that by virtue of Defendants' unspecified "intimate involvement" with the auction, Defendants "conducted business" with the Chicago auctioneer. Pl.'s Resp. 7. Plaintiffs do not allege they are in contractual privity with Defendants.

Plaintiffs allege tortious interference with contractual relations and also seek restitution under the equitable doctrines of unjust enrichment, money had and received and the procuring cause rule.

## II. **ANALYSIS**

### A. **Legal Standard**

In a motion to dismiss, the Court takes all of a plaintiff's well-pleaded facts as true and resolves any factual disputes in favor of the plaintiff. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The Court evaluates merely whether a plaintiff has stated a *prima facie* case for jurisdiction and a cause of action, and resolves all disputes over factual matters in favor of the plaintiff. *Id.*

### B. Personal Jurisdiction

In order for a court to have personal jurisdiction over a defendant, general jurisdiction or specific jurisdiction must exist. Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. *Citadel Group Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). Illinois' long-arm statute is a "catch-all" statue, allowing jurisdiction to the full extent permitted by the 14th Amendment's Due Process Clause in the U.S. Constitution.

For general jurisdiction, a defendant's "contacts with the forum state must be 'so continuous and systematic as to render them essentially at home in the forum state.'" *Colon v. Akil, et al.*, 2011 U.S. App. LEXIS 23632 *6 (7th Cir. Nov. 16, 2011) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). Specific personal jurisdiction can be had if a defendant purposely established minimum contacts with the forum state such that he or she should reasonably anticipate being haled into court. *Tamburo*, 601 F.3d at 701. Where torts are concerned, *Tamburo* outlines a multi-step inquiry as to specific jurisdiction.

#### *1. Purposeful Direction*

First, a defendant's conduct must be purposefully directed at the forum state. *Id.*, 601 F.3d at 702. This "purposefully directed" inquiry has three subparts: (1) whether a defendant

engaged in "intentional conduct," (2) whether a defendant's conduct was "expressly aimed" at the forum state, and (3) whether a defendant knew the effects would be felt (*i.e.*, injured) in the forum state. *Id.*

As to the "expressly aimed" inquiry, *Tamburo* points out that the Seventh Circuit decisions of *Janmark, Inc. v. Reidy*, to which Plaintiff cites, and *Wallace v. Herron* "are in some tension" as to whether the Seventh Circuit merely requires conduct "targeted at a plaintiff whom the defendant knows to be a resident of the state" or whether it requires that the forum state be the focal point of the tort - that is, whether plaintiff can demonstrate that the defendant *expressly aimed* its tortious conduct at the forum. *Tamburo*, 601 F.3d at 705 (citing *Janmark*, 132 F.3d 1200 and *Wallace*, 778 F.2d 391).

In *Janmark*, jurisdiction was found when an out-of-state competitor threatened an out-of-state customer of Illinois business Janmark with a lawsuit if the customer did not stop buying Janmark products. *Janmark*, 132 F.3d 1200. At first blush, *Tamburo* notes, *Janmark* suggests it is enough that the defendant's tort was against an Illinois company and the injury was felt in Illinois. *Tamburo*, 601 F.3d at 705.

But *Wallace* did not find specific jurisdiction in the forum state of Indiana (whose jurisdictional statute is also co-extensive

- 6 -

with the Due Process clause) over California residents when the tortious action in a malicious prosecution case had occurred exclusively in California. *Tamburo* 601 F.3d at 704-705 (quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985).

*Tamburo* resolves this tension by concluding that, in fact, there is more to *Janmark* than meets the eye. The case found jurisdiction based not on in-state effect alone, but with the additional factor that the defendant there had acted with the purpose of interfering with sales originating in Illinois and that the case ultimately "considered the relationship between the allegedly tortious conduct and the forum state itself." *Id.* at 706.

In the case at hand, Plaintiffs have adequately alleged that Defendants' conduct was intentional by stating Defendants deliberately engaged in a patent transfer scheme to keep Plaintiffs' from their fee and interfere with Plaintiffs' contract; Plaintiffs also allege Defendants retained the $2.4 million "knowing full well that their retention of these funds would deprive Plaintiffs of their $120,000 success fee." Compl. 7; Pl.'s Resp. 2.

Plaintiffs have also adequately alleged that Defendants knew the effects of their tort would be felt within the forum state by alleging each Defendant knew of One Voice's fee arrangement with Horizon, knew their actions would deprive Plaintiffs of their fee, and knew both Plaintiffs were located in Illinois.

Whether Defendants' expressly aimed their conduct at Illinois is a closer question. While some cases find that knowing the effects of a tort will be felt in a forum state satisfies the "aiming" requirement, *Tamburo* suggests that even the generous *Janmark* case required more. What *Janmark* required, *Tamburo* tells us, is that there be effect in the forum state plus knowledge the tort would interfere with sales originating in Illinois. *Tamburo*, 601 F.3d at 706. Like *Janmark*, here there was effect in the forum state (Plaintiff was deprived of funds here) plus interference with a contract originating in Illinois and centered around a sale conducted in Illinois.

Therefore, the "purposeful direction" requirement is satisfied.

### *2. Arising Out Of*

Second, *Tamburo* requires that the injury to a plaintiff "arise out of" a defendant's specific contacts with the forum state. *Id.* at 708 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985). This is where Plaintiffs' allegations come up short, because *Tamburo* requires that, at a minimum, "but for" these specific contacts, the tortious injury would not have occurred. *Id.* at 708-709. *Tamburo*, in fact, may require even more than "but for" causation; it may require the contacts be the proximate and legal causation, but we need not decide that as will soon become clear.

Here, Defendants allegedly "worked with Plaintiffs and communicated with Plaintiffs, in this district, regarding Plaintiffs' attempts to lure more investors into One Voice" even before the patent sale idea originated. Pl.'s Resp. 1. By inference, when Plaintiffs state they were in phone and e-mail communications through 2010, there is an allegation that some of those contacts even concerned the sale of the patents. However, those contacts, at least as currently framed by Plaintiffs, are irrelevant to the tort issue. Business contact, even contractual contact, will not alone justify personal jurisdiction. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (referencing *Rush v. Savchuk*, 444 U.S. 320, 329 (1980), where jurisdiction was denied because contacts were not "related to the operative facts of the negligence action.").

Plaintiffs do allege Defendants were in "constant communication" with the Chicago patent auctioneer and "participated" in the sale here. Pl.'s Resp. 7. But again, that transaction is not relevant to the tort issue. There is no allegation that anything was wrong with the sale; what is alleged is that the redirection of the proceeds of that sale was tortious. Plaintiffs do not allege that it was Defendants who instructed either One Voice or the Chicago auctioneer to redirect the proceeds to Defendants, let alone alleging that the instruction to divert the funds came in a specific contact with the forum state. Nor do

Plaintiffs allege that the specific contacts of the e-mails and phone calls were tortious in nature, as the e-mails in *Tamburo* were.

Despite the Plaintiffs' conclusory language that Defendants "reached into this jurisdiction to commit a tort," there is no allegation that "but for" Defendants' specific contacts with the forum state, the tort would not have occurred. Thus, the "arising out of" requirement is not met.

### 3. *Traditional Notions of Fair Play and Substantial Justice*

Third, *Tamburo* requires that haling the defendant into the forum state not "offend traditional notions of fair play and substantial justice." *Id.* at 709 (citing *Int'l Shoe v. Washington*, 326 U.S. 310 (1945)). This analysis examines factors including the burdens on defendants and plaintiffs, the forum state's interest in adjudicating the dispute, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *Burger King*, 471 U.S. at 477.

In regard to "fair play and substantial justice," *Wallace* teaches that one should not be surprised, given one's actions, at being haled into court for them. In *Wallace*, California lawyers were directed by their client to sue an Indiana resident, Wallace. Wallace sued in this circuit for malicious prosecution, but the Seventh Circuit affirmed a finding of no personal jurisdiction.

Despite the lawyers having sent subpoenas and interrogatories into Wallace's forum state, the court deemed those contacts attenuated because the defendants did so on behalf of their client, and to ask the defendants to answer in Indiana "would be unreasonable." *Wallace*, 778 F.2d 391, 394 (1985).

Here, there is a significant burden on the Defendants (one in New Jersey; one in Liechtenstein), particularly given the attenuated nature of the specific contacts alleged. Plaintiffs have not alleged that Defendants, rather than One Voice, chose to make contact with Plaintiffs or the Chicago auctioneer. Defendants' interests in the forum state, like the attorneys' interests in the forum state in *Wallace*, stemmed from another party's (One Voice) interest in the forum state.

Illinois does have a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered in-state by out-of-state actors. So too does the interstate judicial system have an interest in finding a single forum in which to address the allegations.

But there is nothing preventing adjudication in a single forum situated elsewhere, and while another forum might not aid Plaintiffs' interests, that weight does not override the Due Process protections due to Defendants. At least under what has been alleged so far, Defendants could not reasonably anticipate

being haled into court here on the specific contacts so far described.

Therefore, finding jurisdiction here would not comport with fair play and substantial justice.

## IV. CONCLUSION

Because the Plaintiffs do not sufficiently allege specific contacts with the forum state sufficiently linked to the tortious activity, and because haling Defendants into court here would not comport with notions of fair play and substantial justice, the Court finds that it lacks personal jurisdiction in this matter, at least as presently pled. The Court therefore grants the Motion to Dismiss, but does so without prejudice. If Plaintiffs are aware of additional facts or actions that would sustain jurisdiction, they are free to refile their Complaint within thirty (30) days.

Because the Court does not have jurisdiction, it declines to address the other jurisdictional and procedural objections Defendants raise in their Motion to Dismiss.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　United States District Court

**DATE:** 2/3/2012